IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TEXARKANA DIVISION)

| | | |
|---|---|---|
| TOP FLIGHT STEEL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| ENTERPRISE PRECAST CONCRETE OF | § | CIVIL ACTION NO. _____ |
| TEXAS, LLC, B.L. HARBERT | § | |
| INTERNATIONAL, LLC, AND | § | |
| TRAVELERS CASUALTY AND SURETY | § | |
| COMPANY,[1] | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Top Flight Steel, Inc., hereinafter referred to as Plaintiff, complaining of Enterprise Precast Concrete of Texas, LLC, B.L. Harbert International, LLC, and Travelers Casualty and Surety Company, hereinafter referred to collectively as Defendants, and files this its Original Complaint, and for cause of action would respectfully show the Court the following:

## I.
## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims set forth herein include a federal question concerning recovery under a payment bond issued for a federal construction project arising under provisions of the Miller Act as set forth in 40 U.S.C. § 3131, *et seq.* For purposes of federal question jurisdiction, an action

---

[1] This is one of two related cases involving a construction dispute in which B.L. Harbert, Inc. is the prime contractor. The other case Plaintiff intends to file is against a different sub-contractor, RAI Industrial Fabricators, LLC, but has related Miller Act claims against B.L. Harbert and Travelers. However, a separate case is being filed on jurisdictional grounds in this same district, as diversity jurisdiction exists with Plaintiff's claims in the related lawsuit. Should the jurisdictional matters be resolved and should the Court determine it is in the interest of judicial efficiency to consolidate the two cases, whether procedurally or substantively, Plaintiff would be unopposed to such consolidation.

"arises under federal law" if that law creates a claim, or if there is a substantial question that federal law is a necessary element of plaintiff's causes of action. *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 862 F. Supp. 995 (W.D.N.Y. 1994), *affirmed* 94 F.2d 747 (2nd Cir. 1996).

2. Section 3133 of the Miller Act requires a civil action be brought in the United State District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy. Here, the work performed by Plaintiff under contract giving rise to Plaintiff's claims herein was performed at 100 Armory Road, New Boston, Texas 75570, which is within the Texarkana District of the Eastern District of Texas. Therefore, venue is appropriate in the Texarkana District of the Eastern District of Texas as set forth in 40 U.S.C. § 3133(b)(3) and 28 U.S.C. §1391.

3. Plaintiff's associated breach of contract claims against Enterprise Precast Concrete of Texas, LLC, arise from the same nucleus of operative fact as the Miller Act claims Plaintiff asserts against B.L. Harbert and Travelers Casualty and Surety Company. Further, any payment made under the payment bond or by B.L. Harbert will offset any recovery or claim Plaintiff has against Enterprise Precast Concrete of Texas, LLC. Therefore, this Court has federal question subject matter jurisdiction as to the Miller Act claims and may properly exercise pendent jurisdiction on the related and intertwined breach of contract claims against Enterprise Precast Concrete of Texas, LLC.

4. Moreover, this Court has personal jurisdiction over all named defendants because all defendants purposefully availed themselves to Texas through their conduct in performing construction work for the U.S. Army in Texas or issuing a payment bond for construction work on a warehouse owned by the U.S. Army located in Texas.

## II.
## PARTIES

5. Plaintiff, Top Flight Steel, Inc. is a Texas corporation with its principal office located in Texas.

6. Defendant Enterprise Precast Concrete of Texas, LLC ("Enterprise") is a Texas limited liability corporation who may be served with process by and through its registered agent, Dave Ramm, at 800 N. I-45, Corsicana, Texas 75110.

7. Defendant B.L. Harbert International, LLC ("B.L. Harbert") is a foreign limited liability company doing business in Texas and may be served with appropriate process by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

8. Defendant Travelers Casualty and Surety Company ("Travelers") is an active fire and casualty company authorized to conduct business in Texas by the Texas Department of Insurance and may be served with appropriate process at Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## III.
## Facts

**A. Facts Relevant to Plaintiff's Claims Arising From The Enterprise Contract**

9. Plaintiff is in the business of providing labor, equipment rental, and steel erection services to its customers upon customer's requests and orders. Plaintiff was retained to build a warehouse for the U.S. Army Engineer District, Fort Worth, at 100 Armory Road, New Boston, Texas 75570 (the "Project"). Specifically, Plaintiff, as Subcontractor, entered into a contract with Enterprise, as Contractor, for the provision of constructions dated November 22, 2019 (the

"Enterprise Contract") on the Project. A true and correct copy of the Enterprise Contract between Enterprise and Plaintiff is attached hereto and incorporated by reference as Exhibit "A."

10. The Enterprise Contract states that Enterprise is required to provide the following to Plaintiff as part of its obligations:

> The **Prime Contract**[2] provides for the furnishing of labor, materials, equipment and services in connection with construction of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner and Contractor (from which compensation amounts may be deleted) and the Contract Documents enumerated therein, has been made available to the subcontractor.

However, Enterprise failed to provide a copy of its separate contract with the US Army Engineer District, Fort Worth (the "Owner") or make it available to Plaintiff. The Enterprise Contract specifically defined "Contractor" as Enterprise, "Subcontractor" as Plaintiff, and "Owner" as the US Army Engineer District, Ft. Worth. Nothing in the Enterprise Agreement clearly defined B.L. Harbert's role and/or authority, if any, with respect to the work to be performed per the Enterprise Agreement. To the contrary, the language of the Enterprise Agreement contemplated Enterprise was in direct contractual privity with the Owner and was acting as the prime contractor. Therefore, no flow-through provision in any contract between Enterprise and B.L. Harbert has any bearing upon the Enterprise Agreement executed between Enterprise and Plaintiff.

11. Pursuant to the terms of the Enterprise Contract, the base contract amount agreed to be paid by Enterprise to Plaintiff for the labor, equipment, tools, safety protection and services associated with the Work, as defined in Article 8 of the Enterprise Contract, was $473,185.00 as set forth in Article 10.1 of the Enterprise Contract. Additionally, the Exhibit "A" Scope of Work to the Enterprise Contract (the "Scope of Work") details the specific items of Work and

---

[2] Emphasis added.

obligations to be performed by Plaintiff. Generally, the Work provided by Plaintiff to Enterprise involved the erection of wall panels.

12. However, the Enterprise Agreement and Scope of Work contained various qualification and limitations to Plaintiff's contractual obligations to erect the wall panels. As set forth in paragraph 7.3.2 of the Subcontract Agreement:

> The Subcontract Time and Subcontract Sum **shall** be adjusted for increases in the cost and time caused by **suspension, delay** or interruption as described in Section 7.3.1. **Adjustment of the Subcontract Sum shall include profit on the increased cost of performance caused by suspension, delay, or interruption.**[3]

Further, pursuant to the Scope of Work as set forth in item number 26:

> Subcontractor acknowledges that it has reviewed and is familiar with the job site conditions relating to access and staging. **All site condition are to be in conformance with OSHA & AISC code.**[4]

13. To the extent site conditions allowed Plaintiff to perform its obligations as set forth in the Scope of Work, Plaintiff timely provided such work. However, Plaintiff's work on the project was suspended and delayed multiple times due to weather and/or failure by Enterprise or third parties beyond Plaintiff's control to ensure the site conditions were in conformance with OSHA and the AISC code as required by the Enterprise Agreement for erection of the wall panels to continue.

14. Specifically, Plaintiff's itemized Schedule of Values Item Listing for Enterprise consists of a chart that identifies the amount incurred by Plaintiff due to downtime as well as the reason of such down time. A true and correct copy of the Schedule of Values Item Listing is attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

---

[3] *See* Exhibit A, with emphasis added.
[4] *See* Exhibit A, with emphasis added.

**PLAINTIFF'S ORIGINAL COMPLAINT -**                                                           **PAGE 5**

15. Such delays as referenced in the Schedule of Values Item Listing were caused on the Project because Enterprise failed to ensure the minimum jobsite requirements per sections 1926.752 and 1926.1402 of the Safety and Health Regulations for Construction of the OSHA concerning site layout, cranes, and "Supporting materials," section 7.2 of the American Institute of Steel Construction ("AISC"), and various sections of the PCI Erectors Manual Standards and guidelines for the erection of Precast Concrete Products. Enterprises' refusal to provide or maintain the appropriate site conditions as is their required per the Sub-Contract Agreement resulted in delays that are compensable pursuant to section 7.3.2 of the Sub-Contract Agreement.

16. Thus, the delays resulting in Top Flight's claims for downtime of its cranes and equipment were caused directly by Enterprise or third parties beyond Top Flight's control. The vast majority of the charges for additional work was the result of significant downtime during which Plaintiff's equipment was stuck at the Project site. The invoices reflecting the work and charges corresponding to the downtime were charged to Enterprise are summarized as follows:

| Invoice Date | Invoice Number | Balance Due |
|---|---|---|
| 15-Dec-20 | 3079CO | $1,820.00 |
| 10-Dec-20 | 3071CO | $57,200.00 |
| 12-Jan-21 | 3227CO | $5,200.00 |
| 11-Jan-21 | 3222CO | $34,957.50 |
| 20-Jan-21 | 3246CO | $14,500.00 |
| 21-Jan-21 | 3247CO | $14,500.00 |
| 26-Jan-21 | 3250CO | $4,990.00 |
| 27-Jan-21 | 3251CO | $3,375.00 |
| 27-Jan-21 | 3252CO | $4,450.00 |
| 27-Jan-21 | 3253CO | $202.50 |
| 29-Jan-21 | 3254CO | $5,200.00 |
| 1-Feb-21 | 3255CO | $5,200.00 |
| 2-Feb-21 | 3257CO | $7,750.00 |
| 3-Feb-21 | 3259CO | $7,750.00 |
| 4-Feb-21 | 3260CO | $7,750.00 |
| 8-Feb-21 | 3263CO | $7,750.00 |
| 9-Feb-21 | 3264CO | $7,750.00 |

| Date | Invoice | Amount |
|---|---|---|
| 10-Feb-21 | 3266CO | $7,750.00 |
| 11-Feb-21 | 3267CO | $7,750.00 |
| 22-Feb-21 | 3286CO | $7,750.00 |
| 23-Feb-21 | 3287CO | $7,750.00 |
| 24-Feb-21 | 3289CO | $7,750.00 |
| 25-Feb-21 | 3290CO | $7,750.00 |
| 5-Mar-21 | 3296CO | $31,000.00 |
| 10-Mar-21 | 3309CO | $1,040.00 |
| 11-Mar-21 | 3310CO | $13,300.00 |
| 12-Mar-21 | 3320CO | $1,965.00 |
| 15-Mar-21 | 3318CO | $3,770.00 |
| 16-Mar-21 | 3319CO | $3,137.50 |
| 18-Mar-21 | 3321CO | $4,060.00 |
| 19-Mar-21 | 3323CO | $7,530.00 |
| 23-Mar-21 | 3328CO | $7,530.00 |
| 30-Mar-21 | 3434CO | $4,530.00 |
| 31-Mar-21 | 3435CO | $7,550.00 |
| 1-Apr-21 | 3436CO | $2,870.00 |
| 5-Apr-21 | 3489CO | $10,400.00 |
| 8-Apr-21 | 3490CO | $10,400.00 |
| 12-Apr-21 | 34413CO | $20,800.00 |
| 19-Apr-21 | 34414CO | $20,800.00 |
| 26-Apr-21 | 34418CO | $20,800.00 |
| 4-May-21 | 34426CO | $2,700.00 |
| 6-May-21 | 34427CO | $7,845.00 |
| 7-May-21 | 34428CO | $5,230.00 |
| 12-May-21 | 34450CO | $12,475.00 |
| 13-May-21 | 34451CO | $2,495.00 |
| 4-Jun-21 | 34468CO | $4,602.50 |
| 10-Jun-21 | 34469CO | $5,800.00 |
| 11-June-21 | 34470CO | $2,630.00 |
| 16-Jun-21 | 34472CO | $16,850.00 |
| 16-Jun-21 | 988010CO | $1,173.75 |
| 30-Jul-21 | 34463CO | $17,700.00 |
| 6-Aug-21 | 9671CO | $12,980.00 |
| 24-Aug-21 | 6598CO | $14,700.00 |
| | **Total** | **$515,508.75** |

True and correct copies of the invoices detailing the additional change order work not covered by the Enterprise Contract (the "Enterprise Change Order Invoices") are collectively attached hereto as Exhibit "C" and incorporated herein by reference for all purposes.

17. Each of the Enterprise Change Order Invoices identify and itemize the work that was performed and the reason the work was outside the scope of work as defined in the Enterprise Contract.

18. Despite the difficulties encountered by Plaintiff on the Project jobsite, Plaintiff ultimately completed all required tasks under the Enterprise Contract, including additional necessary work per the Enterprise Change Order Invoices. The completed work and itemized allocation of amounts due under the Enterprise Contract and Enterprise Change Order Invoices are summarized on the Schedule of Value Item Listing for Enterprise, which is attached hereto as Exhibit "D" and incorporated herein by reference for all purposes.

19. Plaintiff issued a final payment application, and submitted the final payment application to Enterprise for processing. A true and correct copy of the final payment application (the "Final Payment Application") is attached hereto as Exhibit "E" and incorporated herein by reference for all purposes. The Final Application reflects payment due in the amount of $632,559.25 after application of payments made from previous, interim payment applications submitted to Enterprise in the collective amount of $356,134.50.

20. Despite receiving the Final Payment Application, Enterprise failed and refused to tender the payment due amount of $632,559.25. Enterprise's failure to tender the payment due to Plaintiff was wrongful and unjustified.

21. After accounting for all lawful offsets, payments, and credits, the amount due under the Enterprise Contract to Plaintiff is $632,559.25. Plaintiff has made repeated oral and written demand for payment to Enterprise for payment of the past due amount of $632,559.25, but said defendant has failed and refused to pay Plaintiff. As a result, Plaintiff seeks to exercise its default remedies under the Enterprise Contract in accordance with Texas law.

B. **Facts Relevant to Plaintiff's Claims Arising Under The Miller Act**

22. The Enterprise Contract consists of a contract greater than $100,000.00 for the construction, alteration, or repair of any public building or public work in which the federal government is the owner and is subject to the Miller Act. Prior to construction on the Project, B.L. Harbert obtained a government payment bond for the protection for sub-contractors. For reference, a true and correct copy of the payment bond in the face amount of $67,147,000.00 identifying B.L. Harbert as principal and Travelers Casualty and Surety Company as surety (the "Payment Bond") is attached hereto and incorporated by reference as Exhibit "F." Thus, B.L. Harbert and Travelers bound themselves jointly and severally for payment for services and materials provided by Plaintiff.

23. Plaintiff is at worst a qualified second-tier subcontractor if not a first-tier subcontractor, either of which is entitled to recover under the Miller Act.

24. In an effort to preserve Plaintiff's rights and remedies under the Miller Act and in an abundance of caution, Plaintiff served the alleged prime contractor, B.L. Harbert, and its surety, Travelers, with Miller Act claims notices while Plaintiff continued to perform work under the Enterprise Contract through January of 2022.

25. Before ninety (90) days from the completion of work at the Project jobsite under the Enterprise Contract, Plaintiff sent a final, supplemental Miller Act claims letter dated January 11, 2022, to B.L. Harbert, Travelers, and Enterprise. A true and correct copy of the final Miller Act Supplemental Claim Notice directed to B.L. Harbert and its surety, Travelers, is attached hereto as Exhibit "G" and incorporated herein by reference for all purposes.

26. Neither B.L. Harbert nor Travelers have paid any amounts due and owing to Plaintiff pursuant to Plaintiff's demand for payment as set forth in the Exhibit "G" Miller Act claims notice for $632,559.25, which remains due and unpaid.

27. All conditions precedent to Plaintiff's right to recover judgment, order of sale and attorney fees from B.L. Harbert and Travelers have been performed or have occurred and all notices required have been given or have been waived.

## IV.
## Causes of Action

### Count I – Miller Act Claim Concerning Unpaid Amounts Under the Enterprise Contract
### (B.L. Harbert and Travelers)

28. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

29. B.L. Harbert, as principal under the construction Payment Bond, and Traveleres, as surety under the construction Payment Bond (collectively, the "Miller Act Defendants"), breached their obligations arising under the construction Payment Bond for amounts due and owing under the Enterprise Contract and committed a material default as set forth herein.

30. Such breach was timely noticed and perfected as a Miller Act claim under 40 U.S.C. §3131, *et seq*.

31. Therefore, the Miller Act Defendants B.L. are directly liable for the unpaid amounts owed to Plaintiff under the RAI Contract pursuant to 40 U.S.C. § 3133 as a proximate result of the Miller Act Defendants' breach.

32. As a result, Plaintiff has suffered actual damages in an amount of $632,559.25 with respect to the Miller Act Defendants, and damages within the jurisdictional limit of this Court with respect to said Miller Act Defendants.

WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against B.L. Harbert and Travelers in the above-captioned action in the amount of **$632,559.25** for breach of their obligations under the Payment Bond for unpaid amounts arising out of the Enterprise Contract, (2) Plaintiff be awarded its necessarily and reasonable attorneys' fees, (3) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count II - Breach of Contract Concerning the Enterprise Contract

33. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

34. The conduct of Enterprise with respect to the acts and omissions related to the Enterprise Contract constitutes a breach of contract. Enterprise failed to comply with Enterprise's contractual obligations to Plaintiff. Accordingly, Enterprise's acts and omissions as described herein constitute an unexcused, unjustified, and material breach of contract. As a proximate result of Enterprise's breach of the Enterprise Contract, Plaintiff has suffered actual damages in an amount within the jurisdiction limits of this Court in the amount of $632,559.25, after consideration of all lawful offsets, payments, and credits, excluding prejudgment interest, attorneys' fees as a result of the economic damages for which Plaintiff sues Enterprise.

WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Enterprise in the above-captioned action in the amount of **$632,559.25** for breach of contract, (2) Plaintiff be awarded its necessarily and reasonable attorneys' fees, (3) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count III - Promissory Estoppel

35. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

36. Plaintiff is entitled to recover its damages under the equitable theory of Promissory Estoppel based on Enterprises' conduct, acts and omissions. Plaintiff reasonably relied to its detriment on Enterprises' promises which Enterprise failed to perform, proximately causing Plaintiff to suffer damages for which Plaintiff sues Enterprise. As a proximate result of Enterprises' failure to fulfill its promises, Plaintiff has suffered actual damages in an amount of $632,559.25, which are within the jurisdictional limit of this Court.

WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Enterprise in the above-captioned action in the amount of **$632,559.25** under the legal theory of promissory estoppel, (2) Plaintiff be awarded its necessarily and reasonable attorneys' fees, (3) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which Plaintiff may be entitled at law or in equity.

### Count IV – Quantum Meruit / Unjust Enrichment

37. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

38. Plaintiff is entitled to recover its damages under the equitable theory of quantum meruit and unjust enrichment based on the Enterprises' conduct, acts and omissions. Plaintiff rendered value services and materials to Enterprise at Enterprises' request on the Project. As a result of Plaintiff's rendition of the services and provision of materials, a benefit was conferred upon the Enterprise and accepted by the Enterprise. Enterprise will be unjustly enriched in the amount claimed by Plaintiff if allowed to retain the benefit without payment of the reasonable

value of the services. As a result of the Enterprises' non-payment, Plaintiff has been damaged and is entitled to recover the reasonable value of the services and materials provided to Enterprise in the amount of $632,559.25.

WHEREFORE, Plaintiff prays that this Court: (1) enter a judgment against Enterprise in the above-captioned action in the amount of **$632,559.25** under the legal theory of quantum meruit and unjust enrichment, (2) Plaintiff be awarded its necessarily and reasonable attorneys' fees, (3) Plaintiff be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which Plaintiff may be entitled at law or in equity

### Count V - Attorneys' Fees

39. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

40. As a direct and proximate result of Enterprises' breach of its contractual obligations and those arising by virtue of the laws of the State of Texas, as well as other acts or omissions of unlawful conduct, Plaintiff has been compelled to engage the services of the law firm of Padfield & Stout, L.L.P., licensed attorneys, to represent them in this matter, and has further agreed to pay said attorneys a reasonable fee for their services. Plaintiff requests recovery of the amount of reasonable and necessary attorney's fees as well as costs incurred in the prosecution of this lawsuit pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq*. Plaintiff also requests recovery of its reasonable and necessary attorneys' fees pursuant to the express terms of the underlying contract with Enterprise.

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax

/s/ Christopher V. Arisco
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Christopher Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for Top Flight Steel, Inc.*