UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| THE UNITED STATES, FOR THE USE | § | |
| OF TOP FLIGHT STEEL, INC. | § | |
| | § | |
| V. | § | |
| | § | |
| ENTERPRISE PRECAST CONCRETE | § | No.  5:22CV142-RWS-JBB |
| OF TEXAS, LLC, B.L. HARBERT | § | |
| INTERNATIONAL, LLC, AND | § | |
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY | § | |

---

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

---

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. Before the Court are the following pending motions:

> **Defendant Enterprise Precast Concrete of Texas, LLC's Motion to Stay Litigation Pending Arbitration and Memorandum in Support (Dkt. No. 32); and**

> **BLHI and Travelers' Motion to Dismiss, or in the Alternative, Motion to Stay Pending Arbitration (Dkt. No. 42).**

The United States, for the use of Top Flight Steel, Inc. ("Top Flight"), a sub-subcontractor, brings this action against a contractor, BL Harbert International, LLC ("BLHI"); subcontractor, Enterprise Precast Concrete of Texas, LLC ("Enterprise"); and surety, Travelers Casualty and Surety Company ("Travelers"). Plaintiff Top Flight brings Miller Act claims against BLHI and Travelers and also brings contract-based claims, the "non-Miller Act claims," against Enterprise. Enterprise moves to compel all the parties to resolve their disputes through arbitration and to stay this action pending the outcome of such arbitration pursuant to the Federal Arbitration Act. It is

undisputed that there is a valid arbitration agreement in the sub-subcontract between Enterprise and Top Flight and that Top Flight's non-Miller Act claims against Enterprise all fall within the scope of that arbitration agreement. Because Top Flight does not oppose a stay of this case pending the outcome of arbitration "conditioned on the preservation of all parties' claims, causes of actions, and defenses as of the date this lawsuit was filed," Dkt. No. 32 at 1, the Court recommends Enterprise's motion be **GRANTED** as to Top Flight's non-Miller Act claims against Enterprise, and that those claims be stayed pending arbitration.[1]

However, both Enterprise and Top Flight further request the Court compel arbitration of Top Flight's Miller Act claims against non-signatories BLHI and Travelers. *Id.* at 8-11; *see also* Dkt. No. 49 at 1 ("Top Flight does not oppose the relief sought in the Motion To Compel Arbitration."). Alternatively, Enterprise asserts the Court should stay the litigation pending the arbitration of Top Flight's claims against Enterprise and hold that BLHI and Travelers will be bound by the results of the arbitration. In response and by separate motion, BLHI and Travelers move the Court under Rule 12(b)(6) to dismiss the federal Miller Act claims asserted against them

---

[1] The Fifth Circuit has not directly ruled on whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of 28 U.S.C. § 636(b)(1). *Carlton Energy Grp., L.L.C. v. Cliveden Petroleum Co. Ltd*., No. CV H-22-170, 2022 WL 2240081, at *6 (S.D. Tex. June 22, 2022) (citing *Lee v. Plantation of La., L.L.C.*, 454 Fed. Appx. 358, 359 n.3 (5th Cir. 2011) ("Because we conclude jurisdiction is lacking, we need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order.")). However, the circuit courts that have addressed the question have concluded that motions to compel arbitration are not dispositive, so long as they do not result in dismissal of any claims and instead stay the litigation during the arbitral process. *Broussard v. FinWise Bank, Inc.*, No. SA-21-CV-01238-OLG, 2022 WL 2057488, at *1 (W.D. Tex. May 12, 2022) (citing *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc*., 561 Fed. Appx. 131, 133–34 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation."); also citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (holding that a motion to compel arbitration is not dispositive because a district court retains authority to dissolve stay or review arbitration award)).

Because the undersigned considers whether to stay this case pending arbitration in conjunction with a Rule 12(b)(6) motion to dismiss, the undersigned issues a Report and Recommendation.

in Top Flight's amended complaint or alternatively stay the litigation of Top Flight's Miller Act claims pending the outcome of the arbitration between Top Flight and Enterprise; however, BLHI and Travelers contend that they should not be bound by the results of the arbitration, as Enterprise requests.

For the reasons explained herein, the Court recommends **DENYING** Enterprise's request to compel arbitration of Top Flight's Miller Act claims against BLHI and Travelers; **DENYING WITHOUT PREJUDICE** to refiling after arbitration Enterprise's request that BLHI and Travelers be bound by the results of the arbitration; and **GRANTING** Enterprise's alternative request to stay the proceedings against BLHI and Travelers pending arbitration. The Court further recommends BLHI and Travelers' Rule 12(b)(6) motion to dismiss (Dkt. No. 42-1) be **DENIED WITHOUT PREJUDICE** to being raised in a future motion for summary judgment and that BLHI and Travelers' alternative request to stay pending arbitration be **GRANTED**.

## I.    BACKGROUND

### A.    Factual background

This case stems from a federal construction project for a 400,000 square foot warehouse performed for the U.S. Army at the Red River Army base (the "Project."). The U.S. Army Corps of Engineers engaged BLHI to serve as a general contractor on the Project and had BLHI obtain a payment bond, as required by the federal Miller Act. BLHI obtained that payment bond from Travelers. BLHI engaged subcontractor Enterprise for prefabricated concrete panel work, and Enterprise, in turn, engaged Top Flight as sub-subcontractor to perform concrete panel installation work.

On November 2, 2022, Top Flight, individually and in its own name, filed its original complaint, asserting a Miller Act claim pursuant to 40 U.S.C. § 3131, *et seq*., against BLHI, as

general contractor, and Travelers, as surety, for payment allegedly due to Top Flight under a Standard Form of Agreement Between Contractor Enterprise and Subcontractor Top Flight dated November 22, 2019. Top Flight also asserted related breach of contract, promissory estoppel, and quantum meruit claims against Enterprise in the amount of $632,559.25 under Texas law, subject to this Court's supplemental jurisdiction arising from Top Flight's Miller Act claims against BLHI and Travelers.

## B.    Procedural background

On November 28, 2022, BLHI and Travelers filed a motion to dismiss, or in the alternative, motion to compel arbitration, arguing Top Flight's claims should be dismissed for the following reasons, among others: (1) the claims against BLHI and Travelers are time-barred by the statute of limitations as it pertains to a Miller Act claim, and (2) the Miller Act claims were not brought in the name of the United States. Dkt. No. 9. On January 23, 2023, Enterprise filed its Motion to Stay Litigation Pending Arbitration, requesting the Court compel arbitration of all of Top Flight's claims against Enterprise as well as Top Flight's Miller Act claims against BLHI and Travelers. Dkt. No. 32 (alternatively requesting that the Court stay the Miller Act claims against BLHI and Travelers pending arbitration, finding that BLHI and Travelers will be bound by the results of the arbitration).[2]

Before the Court ruled on either pending motion, Top Flight filed its First Amended Original Complaint on February 8, 2023 (Dkt. No. 40), to bring its Miller-Act claims in the name of the United States "and to provide clarification on the timing of work performed by Top Flight for Enterprise on the Project." Dkt. No. 39 at 2-3; *see also* Dkt. No. 47 at 2 (stating it sought to

---

[2] Enterprise's motion, though styled a motion to stay rather than a motion to compel arbitration, is in substance a motion under §§ 3 and 4 of the Federal Arbitration Act. *See* Dkt. No. 32 at 1; *see also Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (noting that the substance of a motion counts, not its label).

"bolster" the "factual assertions as to why and how Top Flight timely pled its Miller Act claim"). Top Flight specifically alleges it continued to work and/or bill through February 2022 (which is within the statute of limitations):

> Plaintiff issued a final payment application for work it performed at the Project through February of 2022, and submitted the final payment application to Enterprise for processing. A true and correct copy of the final payment application (the "Final Payment Application") is attached hereto as Exhibit "E" and incorporated herein by reference for all purposes. Although previous "final" payment applications may have been issued and served on Enterprise, B.L. Harbert, and/or Travelers on or around November of 2021, any purported "final" payment applications were erroneously issued as Plaintiff was required to provide additional services through January of 2022 at the Project site as reflected by the Final Payment Application. The Final Application reflects payment due in the amount of $632,559.25 after application of payments made from previous, interim payment applications submitted to Enterprise in the collective amount of $356,134.50.

Dkt. No. 40, ¶ 20; *see also id*., ¶ 26.

On February 22, 2023, BLHI and Travelers refiled their motion to dismiss, or in the alternative, motion to stay pending arbitration. Dkt. No. 42. Recently, the parties jointly requested that the Court rule on both pending motions (Dkt. Nos. 32, 42) prior to the extended mediation deadline of September 30, 2023. Dkt. No. 56.

## II. APPLICABLE LAW

### A. The Miller Act

The Miller Act is the basis for federal question jurisdiction and supplemental jurisdiction. *Arena v. Graybar Elec. Co., Inc*., 669 F.3d 214, 220-22 (5th Cir. 2012). This statute, 40 U.S.C. § 3131 *et seq*., imposes certain obligations on the prime contractor on any "contract of more than $100,000 . . . for the construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. § 3131(b). A sub-subcontractor or supplier may mount a Miller Act claim against the prime contractor on the prime contractor's Miller Act bond. *United States for use of Delval Equip. Corp., Inc. v. E. Coast Welding & Constr. Co.*, No. CV ELH-21-1244,

2022 WL 717046, at *19 (D. Md. Mar. 10, 2022) (citing, among other cases, *Arena*, 669 F.3d at 220 ("The [Miller] Act gives suppliers and subcontractors the right to sue a prime contractor in U.S. district court for the amount owed to them.")).

The Miller Act creates a federal cause of action "separate and distinct from state law breach of contract actions." *U.S. for use of Lighting & Power Servs., Inc. v. Interface Const. Corp.*, 553 F.3d 1150, 1153 (8th Cir. 2009) (quoting *United States ex rel. Consol. Elec. & Mechs., Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 435 (8th Cir. 1999)); *see also id.* at 1155 ("When LPS as bond obligee chose to join both obligor Interface and subcontractor Henderson as defendants in its Miller Act claim under the Western Surety bond, it could have joined state law breach of contract claims with its Miller Act claim."). In civil actions, courts routinely treat a Miller Act claim differently than any non-Miller Act claims. *United States for use & benefit of Superior Steel, Inc. v. B.L. Harbert Int'l, L.L.C.*, No. CV 119-173, 2020 WL 4227307, at *8 (S.D. Ga. July 23, 2020) (citing, among other cases, *United States for and on Behalf of Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 ("[W]e have been cited to no authority which stands for the proposition that a subcontractor who arbitrates in accordance with the terms of his subcontract thereby relinquishes his right to bring a subsequent Miller Act suit")). Parties often arbitrate non-Miller Act disputes while bringing civil actions under the Miller Act to preserve Miller Act claims. *Id.* at *10 (citing *Weiss Pollution Control*, 532 F.2d at 1013).

**B.    The Federal Arbitration Act**

The "basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). The FAA embodies a liberal policy toward arbitration and requires the enforcement of arbitration agreements according to their terms. *United States v. Citi Approved Enter. L.L.C.*, No. 6:21-CV-

00386, 2021 WL 4076579, at *1 (W.D. La. Aug. 10, 2021), *report and recommendation adopted*, No. 6:21-CV-00386, 2021 WL 4070929 (W.D. La. Sept. 7, 2021) (citing 9 U.S.C. § 2; also citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

To effect § 2's substantive provision, § 4 of the FAA establishes a procedural mechanism for compelling arbitration when one party has been subjected to a lawsuit it believes is within the ambit of an arbitration agreement. *Hornsby v. Macon Cnty. Greyhound Park, Inc*., No. 3:10CV680-MHT, 2012 WL 2135470, at *2 (M.D. Ala. June 13, 2012). Those provisions provide that "any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable' and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *JE Dunn Constr. Co. v. Owell Precast L.L.C.*, No. 4:20-CV-00158-BLW, 2020 WL 4455113, at *2 (D. Idaho Aug. 3, 2020) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. §§ 2 and 4)).

In determining whether a dispute is referable to arbitration, the court must analyze whether an agreement to arbitrate exists and whether the claim at issue falls within the agreement:

> To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. In view of the policy favoring arbitration, we ordinarily resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. As a consequence, a valid agreement to arbitration applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.

*U.S. ex rel. Peake Const., L.L.C. v. Crown Roofing Servs., Inc*., No. CIV.A. 09-6619, 2010 WL 1416673, at *2 (E.D. La. Mar. 31, 2010) (quoting *Personal Security & Safety Systems v. Motorola, Inc.*, 297 F.3d 388, 391 (5th Cir. 2002) (internal citations and quotations omitted in *Peake*)).

Section 3 of the FAA requires a stay of litigation on "any issue referable to arbitration under an agreement in writing for such arbitration." *U.S. ex rel. John Jamar Const. Servs. v. Travelers Cas. & Sur. Co. of Am.*, No. CIV.A. H-14-3363, 2015 WL 757858, at *1 (S.D. Tex. Feb. 23, 2015) (quoting 9 U.S.C. § 3). "In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *United States v. Int'l Fid. Ins. Co.*, 232 F. Supp. 3d 1193, 1200 (S.D. Ala. 2017) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983)).

Courts have applied various standards when considering a motion to stay or compel arbitration. In some courts, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *United States v. Int'l Fid. Ins. Co.*, 232 F. Supp. 3d 1193, 1200 (S.D. Ala. 2017) (quoting *Owings v. T–Mobile USA, Inc.*, 978 F.Supp.2d 1215, 1222 (M.D. Fla. 2013) (internal quotes omitted in *International Fidelity*)). Alternatively, "[m]otions to compel arbitration . . . concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3). . . ." *Id.* (quoting *Grasty v. Colorado Technical University*, 599 Fed. Appx. 596 (7th Cir. 2015)). According to the Northern District of Texas, "the [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration," *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) (citations omitted), but the "weight of authority" "applies the summary judgment standard." *Id.* at 444. No matter the standard used, the Court considers, for purposes of Enterprise's motion, the exhibits attached to the parties' briefing.

## III. ENTERPRISE'S MOTION

### A.    The contracts

On or about July 29, 2019, BLHI entered into a written contract, Contract No. W9126G19C0029 (the "Prime Contract"), with the United States of America, by and through the United States Army Corps of Engineers, for the construction of or improvements to the Project. As the prime contractor on the Project, BLHI entered into a Payment Bond with Travelers and others listed as surety. Dkt. No. 1-6. On or about January 14, 2020, BLHI and Enterprise signed an Agreement Between Contractor and Subcontractor (the "Subcontract"), under which Enterprise agreed to perform certain work involving the supply and erection of precast exterior panels provided for in the Prime Contract. Affidavit of Scott Davis ("Davis Aff."), ¶ 4; *see also* Dkt. No. 32-2. The Subcontract contains a mandatory dispute resolution section that specifies the path to arbitration between the parties: BLHI has the "sole election" of choosing either litigation or arbitration for all non-Miller Act claims (the contract is silent as to Miller-Act claims). No. 32-2, ¶ 29.

On or about February 5, 2020, Enterprise and Top Flight signed an Agreement Between subcontractor and sub-subcontractor (the "Sub-Subcontract"), under which Top Flight agreed to perform certain work involving the erection of precast exterior panels provided for in the Prime Contract. Dkt. No. 1-1 at 20-21; Dkt. No. 32-3, ¶ 5. Enterprise's arbitration agreement with Top Flight in the Sub-subcontract is broader than its arbitration agreement with BLHI in the Subcontract; specifically, Enterprise and Top Flight agreed that "[c]laims, disputes, or other matters in controversy arising out of or related to this Subcontract . . . shall be subject to . . . binding dispute resolution." Dkt. No. 1-1, ¶ 6.1.1; *see also id.* at § 6.2 (stating that "the method of binding dispute resolution shall be" arbitration "pursuant to Section 6.3 of this Agreement").

**B.     Parties' assertions**

Enterprise and Top Flight request the Court compel arbitration of Top Flight's Miller Act claims against non-signatories BLHI and Travelers. Enterprise asserts BLHI is a third-party beneficiary of the Sub-subcontract; the Subcontract is incorporated into the Sub-subcontract; and equitable estoppel requires that the claim against BLHI and its surety be arbitrated. Dkt. No. 32 at 10. According to Enterprise, the Subcontract arbitration clause is "incredibly broad," *id.* at 11, covering all disputes between Enterprise and BLHI "related in any way to the Subcontract, the Work or the Project." *Id.*; *see also id.* at 3 (quoting Dkt. No. 32-2, ¶ 29).

In their original motion, BLHI and Travelers argued, in the event the Court does not dismiss Top Flight's Miller Act claims against them, that the Court compel all parties to arbitration,  and briefed the issue of whether BLHI or Travelers, as non-signatories, can enforce the Sub-subcontract's arbitration agreement. Dkt. No. 9 at 10-11. In later briefing, however, BLHI and Travelers argued that if the Court does not dismiss the Miller Act claims against them, the Court should stay Top Flight's Miller Act claims pending arbitration of Top Flight's non-Miller Act claims against Enterprise, effectively meaning BLHI and Travelers would not participate in the arbitration. Regardless of whether the Miller Act claims are sent to arbitration proceedings, BLHI and Travelers ask the Court to reject Enterprise's argument that BLHI and Travelers "would somehow be bound by the award" entered in arbitration. Dkt. No. 38 at 3. Therefore, although BLHI and Travelers do not oppose the Court's compelling the dispute between Top Flight and Enterprise to arbitration, their most recent filings indicate they oppose any request that they participate in, or be bound by the results of, that arbitration. Dkt. No. 49 at 1-2.

## C.      Compelling arbitration against non-signatories

"[A]rbitration is a matter of contract and a party cannot be required to submit [] to arbitration any dispute which he has not agreed to so submit." *U.S. ex rel. Peake Const., L.L.C. v. Crown Roofing Servs., Inc*., No. CIV.A. 09-6619, 2010 WL 1416673, at *2 (E.D. La. Mar. 31, 2010) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986)). "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Winco Window Co. v. G & S Glass & Supply, Inc.*, No. 4: 15-CV-309 RL W, 2015 WL 3604072, at *3 (E.D. Mo. June 5, 2015) (quoting *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, L.L.C.*, 756 F.3d 1098, 1100 (8th Cir. 2014) (citing *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84–85 (2002) (delineating potentially dispositive threshold issues between "questions of arbitrability" and "procedural questions"))). The court "presume[s] threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Id.* (quoting *Eckert/Wordell Architects, Inc.*, 756 F.3d at 1100; *Howsam*, 537 U.S. at 83; *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc*., 516 F.3d 695, 701 (8th Cir. 2008)).

An arbitration agreement can be enforced as to a non-signatory only if the non-signatory is bound by that agreement under recognized contract or agency principles. *U.S. ex rel. John Jamar Const. Servs. v. Travelers Cas. & Sur. Co. of Am.*, No. CIV.A. H-14-3363, 2015 WL 757858, at *2 (S.D. Tex. Feb. 23, 2015) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355–63 (5th Cir. 2003)). Those principles are incorporation by reference; assumption; agency; veil-piercing/alter ego; estoppel; and third-party beneficiary. *Id.*; *see also Hellenic Inv. Fund, Inc. v. Det Nortske Veritas*, 464 F.3d 514, 517–20 (5th Cir. 2006) (enforcing a forum-selection clause

against a non-signatory to the contract when the non-signatory received direct and substantial benefits from the signatory's contract performance).

D.    **Analysis**

Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" for an order directing arbitration. 9 U.S.C. § 4. As noted above, all parties agree Top Flight's claims against Enterprise, which are non-Miller Act claims, should be stayed pending arbitration. Enterprise and Top Flight request the Court order that Top Flight's Miller Act claims against BLHI and Travelers be part of that same arbitration (Enterprise alternatively requests that BLHI and Travelers be "bound" by the arbitration). However, there is no written agreement between Top Flight and BLHI or Travelers containing an agreement to arbitrate. Travelers' surety bond, attached as Exhibit F to the original complaint, contains no arbitration clause.

Nevertheless, Enterprise asserts three reasons why Top Flight's Miller Act claims should be compelled to arbitration: (1) BLHI is a third-party beneficiary of the Sub-subcontract; (2) equitable estoppel requires that the claims against BLHI and its surety Travelers be arbitrated; and (3) under a theory of incorporation, arbitration must be compelled under the terms of the Subcontract, which was incorporated into the Sub-subcontract. The first two arguments relate to the Sub-subcontract, and neither BLHI nor Travelers is a signatory to that contract. The third argument relates to the Subcontract between Enterprise and BLHI. According to Enterprise, the Subcontract and Sub-subcontract both directly relate to "and impact the performance of work on the Project," and both contracts "plainly outline dispute resolution procedures that include an option to arbitrate or mandate arbitration." Dkt. No. 32 at 5-6.

Regarding its third argument, Enterprise asserts signatory BLHI should be compelled under a "theory of incorporation" to arbitrate under the terms of the Subcontract because BLHI elected arbitration in its original motion to dismiss.[3] Dkt. No. 32 at 10; *see also id.* at 3 (pointing out that both BLHI and Travelers had, in their original motion, requested the Court compel arbitration if the Miller Act claims are not dismissed under Rule 12(b)(6)). The Subcontract between Enterprise and BLHI – which was incorporated into the Sub-subcontract – contains an agreement to arbitrate. Specifically, Paragraph 29(c) of the Subcontract between Enterprise and BLHI provides for arbitration of any claims, except for Miller Act claims, that BLHI elects to arbitrate. Dkt. No. 32-2, ¶ 29(c).

Although BLHI could be said to have "elected" arbitration in the original motion to dismiss, in the refiled motion to dismiss, BLHI (and Travelers) no longer alternatively request the Court compel arbitration. Rather, they argue, "for the reasons explained in their previously-filed motion to dismiss, reply brief, and response to Enterprise's motion to stay," that the Miller Act claims be stayed while only Top Flight and Enterprise arbitrate the non-Miller Act claims. Dkt. No. 42 at 2; *see also id.* at 13 (noting BLHI and Travelers did not sign the Enterprise Sub-subcontract that contains the arbitration clause). Because BLHI, who has the sole right to elect arbitration under the Subcontract for non-Miller Act claims, no longer requests this relief, Enterprise's reasoning fails.[4] *See U.S. ex rel. TBI Invs., Inc. v. BrooAlexa, L.L.C.*, 119 F. Supp. 3d

---

[3] Under that doctrine, "a contract will incorporate terms from another document by reference when (1) a particular document is described in such terms that its identity may be ascertained beyond doubt, (2) the parties had reasonable notice of the terms, and (3) the parties manifested assent to the terms." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 449 (N.D. Tex. 2019) (quoting *Tuscany S. Am. Ltd. v. Pentagon Freight Sys., In*c., No. 4:12-CV-1309, 2014 WL 4794695, at *2 (S.D. Tex. Sept. 24, 2014)).

[4] BLHI and Travelers argued in their original motion that the incorporation of the AAA rules into the Sub-subcontract, which itself incorporates the Subcontract between BLHI and Enterprise, is "clear and unmistakable evidence" that the parties intended to allow the arbitrator to answer the question of arbitrability. *See Winco Window Co. v. G & S Glass & Supply, Inc*., No. 4: 15-CV-309 RL W, 2015 WL 3604072, at *3 (E.D. Mo. June 5, 2015) (noting the Eighth Circuit

512, 525 n. 1 (S.D.W. Va. 2015). Were the Court inclined to hold BLHI and Travelers' to their withdrawn request, Enterprise has presented insufficient evidence that BLHI's so-called election in the original motion to dismiss was related to any non-Miller Act claims. Thus, the Court finds Enterprise's "theory of incorporation" without merit.

Enterprise makes two additional arguments in support of its request: (1) BLHI is a third-party beneficiary of the Sub-subcontract; and (2) equitable estoppel requires that the Miller Act claims against BLHI and its surety Travelers be arbitrated. Dkt. No. 32 at 10. According to Enterprise, Top Flight's breach of contract claim for non-payment against Enterprise is "intertwined with the Miller Act claim" for non-payment, and the facts underling the Miller Act claims directly arise from Top Flight's work on the Project; consequently, the Miller Act claims against BLHI and Travelers are subject to arbitration.

Non-signatories to a contract with an arbitration provision may be bound by the agreement and arbitration provision under ordinary contract provisions, including equitable estoppel. *JE Dunn Constr. Co. v. Owell Precast L.L.C.*, No. 4:20-CV-00158-BLW, 2020 WL 4455113, at *8 (D. Idaho Aug. 3, 2020). "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Id.* (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004))). "This theory seeks to prevent the inequity that would result if one could claim the benefits of a contract without being bound to the other terms in that contract. It is critical that the benefit received be a direct benefit as an indirect benefit is not

had "previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability"). However, no party currently makes that argument; more importantly, no party shows that BLHI had the intent to leave the question of arbitrability of Miller Act claims to the arbitrator when their agreement specifically excluded Miller Act claims from the arbitration agreement.

sufficient to bind a non-signatory to an arbitration clause." *United States for use of Lighting & Power Servs., Inc. v. Interface Constr. Corp.*, No. 4:07CV1144 ERW, 2007 WL 9725001, at *3 (E.D. Mo. Nov. 20, 2007), *aff'd sub nom. U.S. for use of Lighting & Power Servs., Inc. v. Interface Const. Corp.*, 553 F.3d 1150 (8th Cir. 2009) (citation omitted). While BLHI never directly disputes that it, as the prime contractor, receives a benefit from Top Flight performing the work as contemplated by the Sub-subcontract, Enterprise fails to show how BLHI is attempting to "avoid the burden" of the Sub-subcontract's arbitration agreement in this circumstance. Top Flight brought Miller Act claims against BLHI and non-Miller Act claims against Enterprise. Enterprise fails to show that equity calls for expanding the arbitration to include the Miller Act claims. Therefore, the Court concludes BLHI is not bound to the arbitration clause in the Sub-subcontract through the estoppel theory.

Regarding Travelers, courts in this circuit have held that a surety who was not a party to the subcontract that provided for arbitration could not be joined as a party in the arbitration proceedings. *United States v. Citi Approved Enter. L.L.C.*, No. 6:21-CV-00386, 2021 WL 4076579, at *2 (W.D. La. Aug. 10, 2021), *report and recommendation adopted*, No. 6:21-CV-00386, 2021 WL 4070929 (W.D. La. Sept. 7, 2021) (stating Miller Act claims against the surety as the issuer of the bond and not against the subcontractor itself were not subject to the arbitration agreement); *see also U.S. for and on Behalf of Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir.1976) (explaining that "Argonaut, the surety, was not a party to the subcontract that provided for arbitration and could not be joined as a party in the arbitration proceedings."). Courts have compelled subcontractors to arbitrate claims with sureties where a bond agreement incorporated a contract or subcontract containing an arbitration clause—but the bond agreement here does not fit that fact pattern. *See 84 Lumber Co., LP v. Liberty Mut. Ins. Co.*,

No. 3:13-CV-00579 VLB, 2014 WL 1668476, at *9 (D. Conn. Mar. 4, 2014) (citing *Blumenthal–Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236 F.Supp.2d 575, 577 (E.D.Va.2002); *U.S. for Use & Benefit of Air–Con, Inc. v. Al–Con Dev. Corp.*, 271 F.2d 904 (4th Cir.1959)).

Enterprise has not shown the payment bond incorporated by reference the Sub-subcontract. Therefore, the Court finds no basis to compel Travelers as surety to arbitrate. In sum, the Court finds no basis to compel arbitration of Top Flight's Miller Act claims against non-signatories BLHI and Travelers under the valid arbitration agreement in the Sub-subcontract with Enterprise. Accordingly, the Court declines to order Top Flight's Miller Act claims to arbitration, although this does not prevent the parties from coming to an agreement to do so in order to possibly effect a more speedy resolution of Top Flight's claims against BLHI and Travelers, which depend on the resolution of the underlying dispute between Top Flight and Enterprise.[5]

After determining that Top Flight's Miller Act claims against BLHI and Travelers are not subject to arbitration, the Court considers BLHI and Travelers' motion to dismiss, or alternatively to stay, Top Flight's remaining Miller Act claims.

## IV. BLHI AND TRAVELERS' MOTION TO DISMISS OR ALTERNATIVELY TO STAY

### A.    Parties' assertions

In their refiled motion to dismiss, BLHI and Travelers move the Court under Rule 12(b)(6) to dismiss the federal Miller Act claims asserted against them in Top Flight's amended complaint, referencing certain exhibits attached to the original complaint and referenced in the amended

---

[5] The Court does not address at this time the extent to which BLHI and Travelers will be bound by the results of the arbitration. The parties may raise that dispute once it is crystalized after arbitration. *See United States v. Consigli Const. Co.*, 873 F. Supp. 2d 409, 417 (D. Me. 2012) (noting that "[t]he majority of federal courts [] have held that an arbitration award binds a Miller Act surety"); *but see U.S. for Use of Pensacola Const. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306, 311-14 (W.D. La. 1988) (reasoning that an arbitration award would not bind a Miller Act surety).

complaint.[6] Dkt. No. 42 at 1 & 3, n. 3. Alternatively, BLHI and Travelers move the Court to stay the litigation of Top Flight's Miller Act claims pending the outcome of the arbitration between Top Flight and Enterprise.

In its response, Top Flight asserts BLHI and Travelers cannot meet their "heavy burden" to prevail under Rule 12(b)(6) on a statute of limitations defense, noting Top Flight has explained the discrepancy between the various payment applications attached as exhibits. Dkt. No. 47 at 3-4, 7. According to Top Flight, "[w]hile both Exhibit G and E to Top Flight's Original Complaint are entitled 'Final Invoice,' such inconsistency" does not foreclose all possible arguments that Top Flight rendered services to Enterprise after November 1, 2021. *Id*. at 8. Top Flight is unopposed to an abatement of the lawsuit and entry of an order compelling arbitration per Enterprise's motion, "provided the rights, causes of action, claims, and defenses of all parties are preserved as of the original filing date of November 2, 2022, and provided that Defendants [BLHI and Travelers] are likewise compelled to participate in the arbitration." *Id*. at 8-9. In its response to BLHI and Travelers' motion, Top Flight makes no argument, and cites no cases, in opposition to BLHI and Travelers' alternative request for a stay of the Miller Act claims against them.

In their reply, BLHI and Travelers request the Court rule on their motion to dismiss "before sending a facially-invalid claim to arbitration." Dkt. No. 48 at 1. According to BLHI and Travelers, the payment application attached as Exhibit G to the original complaint, "conclusively establishes that Top Flight's Miller Act claim is time-barred by the one-year statute of limitations" because it

---

[6] Top Flight's amended complaint does not attach the exhibits; however, it references exhibits that appear to be the same as the exhibits attached to Top Flight's original complaint. The Court will consider the exhibits herein. *See United States for use of Delval Equip. Corp., Inc. v. E. Coast Welding & Constr. Co.*, No. CV ELH-21-1244, 2022 WL 717046, at *12 (D. Md. Mar. 10, 2022); *see also id*. at *12, n. 18 (noting the plaintiff did not resubmit the exhibits with the amended complaint to the extent the amended complaint referenced an exhibit previously submitted with the original complaint).

shows that Top Flight performed no work after November 1, 2021. *Id.* at 4. BLHI and Travelers assert Exhibit E is "unsigned and internally inconsistent and ambiguous . . . while the November 2021 final payment application relied upon by BLHI and Travelers (*see* Exhibit G) is unambiguous and signed, sworn, and notarized by Top Flight." *Id.* at 5. Thus, according to BLHI and Travelers, the Court should disregard Exhibit E as wholly contradicted by Exhibit G and dismiss Top Flight's Miller Act claims at this time as untimely. *Id.*; *see also id.* at 5-6 (further asserting Exhibit E "itself actually establishes that all of Top Flight's work on the project occurred before November 2021").

Alternatively, BLHI and Travelers request the Court stay the Miller Act claims during the pendency of the Top Flight-Enterprise arbitration. *Id.* at 7. According to BLHI and Travelers, case law and judicial economy both indicate that staying the Miller Act claim is the proper route because the Court would only need to decide the Miller Act claim if both (1) Top Flight receives an award in arbitration; and (2) Enterprise failed to satisfy the same. *Id.* at 7-8.

## B.    Applicable law

The Fifth Circuit has identified the factors for deciding when a non-signatory can obtain a mandatory stay of litigation under § 3 pending arbitration:

> [S]everal factors emerge for invoking § 3 on the application of a non-signatory: 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration.

*U.S. ex rel. John Jamar Const. Servs. v. Travelers Cas. & Sur. Co. of Am.*, No. CIV.A. H-14-3363, 2015 WL 757858, at *1 (S.D. Tex. Feb. 23, 2015) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquam*, 372 F.3d 339, 343 (5th Cir. 2004)). If a mandatory stay under § 3 is not applicable, a court may still exercise its discretionary power to stay claims between non-arbitrating parties pending the outcome of arbitration as a means of controlling and managing the docket and to preserve the purpose of the arbitration. *Id.* (citing *Complaint of Hornbeck Offshore (1984)*

*Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983))).

**C.    Analysis**

Although the Court declines to find that a stay of the Miller Act claims against BLHI and Travelers is mandatory under § 3 of the FAA, the factors at a minimum support a discretionary stay of this litigation between BLHI and Travelers pending the outcome of the arbitration between Enterprise and Top Flight. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983) (stating that in some cases "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration" and further stating that decision is one left to the district court as a matter of its discretion to control its docket).

Not only has the Fifth Circuit recognized that a non-signatory may obtain a stay against a signatory when the issues in the litigation between them substantially overlap with the arbitrable issues between the signatories, *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000), but the Fifth Circuit has also specifically approved of a stay of Miller Act claims against a surety. *United States for and on Behalf Portland Constr. Co. v. Weiss Pollution Control Co.*, 532 F.2d 1009, 1013 (5th Cir.1976). A number of other courts have stayed litigation when a subcontractor sues a surety under the Miller Act and the litigation substantially overlaps with arbitration between the subcontractor and prime contractor. *U.S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc.*, 364 F.2d 705, 709 (2d Cir.1966) (upholding the trial court's stay of the subcontractor's Miller Act claim pending arbitration between the prime and subcontractor); *U.S. ex rel. Tindall Corp. v. Satterfield & Pontikes Const., Inc.*, No. SA–14–cv–33–XR, 2014 WL 819478, at *3 (W.D. Tex. March 3, 2014) ("the claim against the surety Defendants is appropriately stayed in order to promote judicial economy and avoid the risk of conflicting

judgments between this court and the arbitrator"); *U.S. ex rel. Tarant, L.L.C. v. Federal Ins. Co.*, 672 F.Supp.2d 92, 101 (D.D.C.2009) ("It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results.")).

Here, a stay would help promote judicial economy and efficiency by preventing needless litigation and waste of judicial resources. *United States v. Travelers Cas. & Sur. Co.*, No. 3:21-CV-614-MMH-LLL, 2021 WL 10382213, at *10 (M.D. Fla. Dec. 17, 2021) ("Importantly, AEC's Miller Act claim against the Surety Defendants depends on whether Haskell paid AEC all sums owed under the Subcontract. . . . Whether Haskell paid AEC everything owed under the Subcontract is part of the dispute being ordered to arbitration. . . . Thus, the arbitrable issues in this case predominate, and the outcome of the arbitration will likely affect the outcome of the Miller Act claim against the Surety Defendants. . . . [T]his Court finds that staying this action pending the resolution of the arbitration will prevent needless litigation, thereby advancing judicial economy and efficiency.").

The Court also finds without merit BLHI and Travelers' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[7] According to BLHI and Travelers' refiled motion to dismiss, although Top Flight alleges it continued to perform work under the Enterprise contract through January of 2022, Top Flight's exhibits all reflect that Top Flight last performed work on the Project

---

[7] Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *United States for Use & Benefit of PBT & JBJ All. v. Frankenmuth Mut. Ins. Co.*, No. 3:18-CV-2785-B, 2019 WL 1979362, at *2 (N.D. Tex. May 3, 2019) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Id.* (quoting *Ashcroft*, 556 U.S. at 679 (cleaned up in *Frankenmuth*)).

more than a year before Top Flight filed its original complaint. Dkt. No. 42 at 2. Specifically, BLHI and Travelers reference the November 2, 2021 "final" payment application signed by Top Flight's president, attached as Exhibit G to the original complaint, stating it makes clear that Top Flight, in fact, performed no work as of November 2, 2021. *Id.* at 3, 7. Arguing the sworn application shows that Top Flight's last day of work, at the very latest, was November 1, 2021, BLHI and Travelers argue Top Flight's complaint, filed November 2, 2022, was beyond the one-year time frame to bring a Miller Act claim. *Id.* at 8. BLHI and Travelers assert the Court need not credit Top Flight's allegations to the extent they conflict with the documents that Top Flight attached to its original complaint. *Id.* at 9.

The Miller Act sets forth the deadline by which an action on a surety bond obtained in compliance with the act must be commenced: "no later than one year after the day on which the last of the labor was performed or material supplied by the person bringing the action." *Diamond Servs. Corp. v. T.W. LaQuay Marine, L.L.C.*, No. 3:21-CV-78, 2022 WL 909004, at *1 (S.D. Tex. Mar. 24, 2022), *aff'd sub nom. Diamond Servs. Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 22-40240, 2022 WL 4990416 (5th Cir. Oct. 3, 2022) (quoting 40 U.S.C. § 3133(b)(4)). The relevant period for statutes of limitations "exclude[s] the day of the event that triggers the period" and runs every day thereafter including the last day of the period, except if the last day is a Saturday, Sunday, or legal holiday. *United States for use of RCO Constr., L.L.C. v. Fed. Ins. Co.*, 601 F. Supp. 3d 1091, 1097 (N.D. Okla. 2022) (quoting FED. R. CIV. P. 6(a)(1)). "Under this rule, when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act." *Id.* (quoting *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003)).

To assess what the last day of work was for statute of limitations purposes, the court must determine when work on the "original contract" concluded. *Id.* (citing *U.S. for Use of Magna*

*Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir. 1983) (internal quotations omitted in *RCO*)). There appear to be two core views on how to determine a contract's conclusion date: (1) "upon substantial completion of a subcontract" and (2) "upon completion of the original requirements of the contract (as opposed to completion of 'corrections or repairs')." *Id.* (citation omitted). The Fifth Circuit adopts the minority view under which "substantial completion" is the operative test of when the statute of limitations begins to run. *Id.* at 1097, n. 5 (citing *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164 (5th Cir. 1973); *General Ins. Co. v. United States*, 406 F.2d 442, 443–44 (5th Cir. 1969), *reh'g denied*, 409 F.2d 1326 (5th Cir.), *cert. denied sub nom, United States for Use of Audley Moore & Son v. General Ins. Co.*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969); *Trinity Universal Ins. Co. v. Girdner*, 379 F.2d 317, 317 (5th Cir. 1967)).

When determining what constitutes primary contract work and what constitutes a repair, courts in the Fifth and Eleventh Circuits consider the following factors: (1) the original contract specifications, (2) the unexpected nature of the work, (3) the value of the materials; and (4) the importance of the material/labor to the overall project. *U.S. ex rel. Allied Assocs. Comm'l Floors Inc. v. Farr Builders Inc.*, No. SA-13-CV-0897, 2014 WL 280396, at *2 (W.D. Tex. Jan. 23, 2014) (citing *S. Steel Co., Inc. v. United Pac. Ins. Co.*, 935 F.2d 1201, 1205 (11th Cir.1991) (citing *United States ex rel. Georgia Elec. Supply Co. v. United States Fidelity & Guar. Co.*, 656 F.2d 993, 996 (5th Cir.1981))). In *Farr*, the court denied a motion to dismiss based on the one-year statute of limitations, concluding the "act of installing the ceramic tile, which testimony indicates occurred within the filing period, was necessary to complete Allied's obligations under the original

contract."[8] *Id.* at *3 (citing *Trinity Universal Ins. Co. v. Girdner*, 379 F.2d 317, 318 (5th Cir.1967) (per curiam) (finding that replacement of pipe was not a "repair" because it was necessary for completion of the project and further noting "[t]here is no contention that this work was a sham to extend the period of limitation")). Determining whether a subcontractor's contributions were part of the base contract or were remedial in nature is a fact-intensive inquiry. *United States v. Leebcor Servs., L.L.C.*, No. 4:20-CV-179, 2021 WL 5218530, at *6 (E.D. Va. Sept. 20, 2021), *report and recommendation adopted sub nom. United States for Use & Benefit of McKenney's, Inc. v. Leebcor Servs., L.L.C.*, No. 4:20CV179, 2022 WL 122367 (E.D. Va. Jan. 12, 2022) (citing *Johnson*, 485 F.2d at 173 ("[E]ach case must be judged on its own facts and . . . sweeping rules about 'repairs' offer little help in the necessary analysis.")).

If, as urged by BLHI and Travelers, November 1, 2021 was the last of the labor performed or material supplied by Top Flight, something which Top Flight disputes, then the last day to file was November 1, 2022, one day before Top Flight filed its original complaint. According to BLHI and Travelers, neither Exhibit G, which contains summaries of work and a list of "All Transactions," nor Exhibit E relied upon by Top Flight, show invoices issued after Top Flight's November 2, 2021 "final" payment application. Dkt. No. 48 at 7.

While the dates and contents of the exhibits to the original complaint may not reference invoices past November 2, 2021, at this early stage of litigation, the Court finds the allegations in Top Flight's amended complaint sufficiently allege a timely cause of action for a violation of the

---

[8] Although the court in *Farr* stated the Miller Act's time limit was jurisdictional, *U.S. ex rel. Allied Assocs. Comm'l Floors Inc. v. Farr Builders Inc.*, No. SA-13–CV-0897, 2014 WL 280396, at *1 (W.D. Tex. Jan. 23, 2014), the Miller Act is "limitational" or a "claim-processing rule" as opposed to a jurisdictional rule. *Fisk Elec. Co. v. DQSI, L.L.C.*, No. CIV.A. 15-2315, 2015 WL 6696751, at *6 (E.D. La. Nov. 3, 2015) (citing *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F .2d 253, 257 (5th Cir.1991)); *see also Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir.2012). As such, the statute of limitations under the Miller Act may be subject to modification under equitable estoppel or equitable tolling. *Id.* (citing *United States v. Fid. & Deposit Co. of Maryland*, 813 F.2d 697, 700 (5th Cir.1987)).

Miller Act. Specifically, Top Flight alleges it was required to provide additional services through January of 2022 at the Project site. Dkt. No. 40, ¶ 20; *see also id.*, ¶ 26 ("In an effort to preserve Plaintiff's rights and remedies under the Miller Act and in an abundance of caution, Plaintiff served the alleged prime contractor, B.L. Harbert, and its surety, Travelers, with Miller Act claims notices while Plaintiff continued to perform work under the Enterprise Contract through January of 2022. Any work performed by Plaintiff through January of 2022 would not have been accounted for in any purported 'final' payment application issued or served by Plaintiff or Plaintiff's counsel in November of 2022.").

Top Flight has sufficiently alleged compliance with the statute of limitations, although it was not required to do so, and it is not apparent from the face of the complaint that the matter necessarily falls outside the statute of limitations. *United States v. Preferred Builders Grp., L.L.C.*, No. 5:14-CV-26073, 2015 WL 12791746, at *4 (S.D.W. Va. Apr. 30, 2015); *see also* U.S. *ex rel. J & M Env't & Indus. Servs., L.L.C. v. Metro. Abatement Co.*, No. CIV.A. 03-2477, 2004 WL 1661205, at *2 (E.D. La. July 22, 2004) (stating that for the purpose of resolving the Rule 12(b)(6) motion to dismiss a Miller Act claim as barred by the Act's period of limitations, the plaintiffs' allegations in the complaint would be taken as true).

It is true that conclusory allegations are insufficient to survive dismissal if contradicted by documents attached to the complaint. *Long v. Dearborn Nat'l Life Ins. Co.*, No. 21-20246, 2022 WL 797417, at *4 (5th Cir. Mar. 15, 2022) (citing *Hollingshead v. Aetna Health Inc.*, 589 Fed. Appx. 732, 737 (5th Cir. 2014) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.") (internal citation omitted in *Long*)). However, the Court is not

convinced that Top Flight's allegations – that it performed work under the Enterprise contract after November 1, 2021 – are conclusory. Nor is the Court persuaded the allegations cannot be reconciled with the exhibits Top Flight incorporates in its pleadings. The Court simply does not find resolution of BLHI and Travelers' statute of limitations defense appropriate at this stage of the proceedings. *Dollery v. Post Acute Med. Mgmt., L.L.C.*, No. 6:18-CV-00104, 2022 WL 161333, at *1 (S.D. Tex. Jan. 18, 2022) (noting that an argument that a claim is time-barred under the statute of limitations is an affirmative defense, and further noting that, as a general rule, the issue is normally one that must be resolved through discovery and summary judgment or trial).

Therefore, the undersigned recommends the Court deny the Rule 12(b)(6) challenges pertaining to the statute of limitations without prejudice to being raised in a future motion for summary judgment. The undersigned further recommends the Court invoke its broad discretionary powers to order a stay of the litigation of the Miller Act claims against BLHI and Travelers pending the outcome of the Top Flight-Enterprise arbitration. C*ent. Rock Corp. v. Horton Constr. Co.*, No. 2:13-CV-00406-PM-KK, 2013 WL 12184300, at *5 (W.D. La. July 31, 2013) (citing *U.S. ex rel. MilestoneTarrant, L.L.C. v. Federal Ins. Co*., 672 F. Supp. 92, 101 (D. D.C. 2009) (finding that a stay of Miller Act litigation against a non-arbitrating surety was appropriate under the court's discretionary powers instead of the mandatory stay provision under the FAA)).

## V.  RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendant Enterprise Precast Concrete of Texas, LLC's Motion to Stay Litigation Pending Arbitration and Memorandum in Support (Dkt. No. 32) be **GRANTED** only as to Top Flight's non-Miller Act claims against Enterprise, and that those claims be stayed pending arbitration, but that Enterprise's (and Top Flight's) request to compel arbitration of Top

Flight's Miller Act claims against BLHI and Travelers be **DENIED**, with Enterprise's request that BLHI and Travelers be bound by the results of the arbitration being **DENIED WITHOUT PREJUDICE** to refiling after arbitration. It is further

 **RECOMMENDED** that BLHI and Travelers' Motion to Dismiss Pending Arbitration (Dkt. No. 42-1) be **DENIED WITHOUT PREJUDICE** to being raised in a future motion for summary judgment and that BLHI's and Travelers' Alternative Motion to Stay Pending Arbitration (Dkt. No. 42-2) be **GRANTED**.  It is further

 **RECOMMENDED** that the District Court instruct the Clerk to stay this case and to advise the parties that they may move to vacate the stay upon the final resolution of the arbitration proceedings between Top Flight and Enterprise.

Objections

 Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

 Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

      SIGNED this the 15th day of June, 2023.


_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE